Good morning. Good morning, Your Honors. Good morning. Morning. May it please the Court, I am Stephanie Rice, arguing on behalf of the petitioner Elton Yadimir Mendoza Rizo, and I'm hoping to reserve two minutes of rebuttal, if possible. Keep it on the clock. Okay. If the Court's running you over, we may give you a little break on that, but try to watch your time there. I will watch it. Thank you, Your Honor. In this case, a review of the record clearly reflects that Mr. Mendoza Rizo met his burden for establishing that he has suffered past persecution and has a well-reasoned fear of future persecution. Before the evidence and testimony was even presented at the removal hearing in this case, the government actually stipulated to the gruesome murder of Mr. Mendoza Rizo's father, as well as the fact that the political group the Sandinistas, who were responsible for the murder of Mr. Mendoza Rizo's father, also threatened to kill the entire family. Well, go ahead. Go ahead, Judge. Okay. The first question, of course, is whether we have jurisdiction at all, and I wondered under the recent case of Abdelsan, do we have jurisdiction since there's been a remand for these advisals regarding voluntary departure? Yes, Your Honor. It's the position of Petitioner that Abdelsan doesn't necessarily apply to this exact scenario because while the holding in that case did find that if the Board of Immigration Appeals remanded back down to the immigration judge on substantive issues that it was not a final order, they did not find that when a case was remanded for procedural issues, specifically addressing voluntary removal, that this court held that that would still constitute a final order. Counsel, on page 56 of Abdelsan, the court said, when the BIA remands to the IJ for any reason, no final order of removal exists until all administrative proceedings have concluded. What do you think about that? What impact does that have on this case? Respectfully, at footnote 8 in that case, On page 526, right? Correct, yes. At page 526 at footnote 8, this court held that under the facts of this case, we need not revisit our rule that the BIA's decision is a final order of removal when it remands for consideration of voluntary departure but denies all other forms of relief. Here, the BIA essentially denied all other forms. Citing Pinto, correct? Citing Pinto as well as Castron Garcia versus INS. Okay. So you say we do have jurisdiction. If we do have jurisdiction, did he exhaust his claims? I mean, that's the next problem, isn't it? Yes, Your Honor. It is the Petitioner's position that he did exhaust his claims and that he did, in fact, meaningfully challenge at the BIA level. Well, he didn't challenge the denial of the CAT application at all. Do you concede that? With respect to the CAT application, yes. Okay. So that's out. And then with respect to asylum and withholding of removal, you say he meaningfully did challenge them? Yes, Your Honor. The BIA based in part its summary dismissal on the case of Rojas Garcia versus Ashcroft, asserting that cursory submissions in a notice of appeal do not apprise the BIA of the particular basis for the alien's claim that the decision below was wrong. And we have our own embanked decision in Abebe versus Mukasey that a claim that's raised but then not pursued in the brief is not properly exhausted? Yes. And I believe that the situation here? No. I would disagree. I would respectfully disagree in that. Well, before you go on, if you look at the decision, because I think this is a very great question, I think you ought to look at the decision of the BIA on page two, the first paragraph. It says right there, for instance, as to the IJ's finding that the respondent's asylum application is time barred and its untimeliness is not legally excused, the respondent only argues that the board uphold the finding but that he is withholding of removal. So it seems to me that the board did not think there was any asylum claim, and the board didn't think there was any cat claim, and they went on to suggest as to whether there was a withholding claim. And then they said as to withholding of removal, the respondent broadly asserts his prima facie eligibility, but he does not address how the record evidence establishes a clear likelihood of persecution. So it seems to me that the board suggests that there's no asylum, there's no cat, but as to withholding, the only thing we can look at is the clear likelihood of persecution. I would agree with respect to withholding, and I would submit to this court that Mr. Mendoza-Rizzo meets the burden for withholding of removal. But at the same time, with respect to the asylum claim and the BIA's failure to review the merits of that claim, in Rojas-Garcia, the problem was that Mr. Mendoza-Rizzo was an unaccompanied minor when he entered. But he was 20 years old at the time of his petition for asylum. Isn't that the trigger date, the filing of the petition?    No. I respectfully don't believe that that's what the precedent of this Court has held. It's the statute. Are you denying what Judge Shetland said about his age when he filed? When he filed, he was 19. Okay. I thought he was 20. But he was over 18 in any event. He was over 18 when he filed. Right. However, as an exception to the one-year rule, which doesn't operate as an absolute time bar, is when somebody has legal disability or is an unaccompanied minor. At the time he entered, he was. Right. But I kept asking you, isn't it as of the time of the application? And you say no? At the time of the application, it's my understanding that it doesn't necessarily matter if the application was then filed within a year after becoming an adult and no longer qualifying as an unaccompanied minor, but it's within a reasonable time thereafter. Do you want to save any of your time, counsel, your less than two minutes? Yes, please. If you want to save time, maybe you want to hear from the government, and then you have a chance to come back up. Thank you very much. Okay. We'll hear from the United States. Good morning. May it please the Court. My name is Craig Newell, and I'm here on behalf of the Attorney General. This Court's en banc decision in Amdisalon holds that a board decision remanding to the immigration judge for any reason is not a final order of removal. But did that decision overrule Pinto? That decision did not choose to address or revisit the line of case law Pinto at all. Isn't this case on all fours with Pinto, in the sense that the only remand is for the advisers on voluntary departure, which is unreviewable anyway by us? So all the reviewable claims are final. Yes, Your Honor. Factually, this case is in line with Pinto and Castrillon. But the Amdisalon decision is clearly irreconcilable with Pinto in that line of cases. Not really, because there's nothing for this Court to review with respect to advisers. That's not a reviewable order. That's probably why Pinto was not specifically overruled. It could have. After all, the Amdisalon court could have overruled Pinto. Right. I think, though, conceptually it is, is because this remand, while it stated that the purpose of it is for the voluntary departure advisers and a new time period, it was still a general-purpose remand. When the board remands, and while it states a particular purpose, if it does not retain jurisdiction and then limit the scope of that remand, that the immigration judge takes full jurisdiction over that case again, and he may hear, he or she may hear any new claims or new evidence presented during that remanded proceeding, even if they are beyond the stated purpose. This is in line with the ---- This case is not on all fours with Pinto. It seems to me that if you read the facts of Pinto and you read the facts here and the procedure in both cases, they are the same. What is the difference? Your Honor, the difference is that the holding and underlying reasoning of Amdisalon undercuts ---- You don't want to answer my question, I guess. I'm trying to figure out whether there's any difference between the facts and the procedure that was involved in Pinto and the facts and procedure that are involved here. And I found none. And then I went to Amdisalon and I read Amdisalon Note 8. And Note 8 said, under the facts of this case, we need not revisit our rule that the BIA's decision is a final order of removal when it remands for consideration of voluntary departure but denies all other forms of relief, which is exactly what Pinto did and exactly what our case does. So, therefore, I don't know how we don't say it's a final order. Yes, Your Honor. With respect to your first question, the factual difference, the factual difference between Pinto and here, there is one. In Pinto, the remand limited its ---- I went back and checked the actual Board decision in that case in the past week, and it did limit the remand to that one issue, voluntary departure. Here, while it gave a reason for the remand, it did not retain jurisdiction and limit it to a specific purpose. And this gets a ---- and a case to look at is this Court's Fernandez v. Holder case, 619F3rd 1069. And this re ---- or agrees with the Board's matter of Patel decision. So it says that the immigration judge's jurisdiction on remand from the Board is limited only when the Board especially retains jurisdiction and then qualifies or limits the scope of that remand. So it's ---- there's difference between an articulated purpose for the remand without any expressed limit of the scope and one where there is that. So ---- and Fernandez thus says when there's only a particulated ---- particular ---- particularized purpose for the remand, the immigration judge may consider new claims or issues that may come up during the remanded proceedings and such. So as long as there's these remanded proceedings going on before the agency, there's this possibility of new claims, new evidence that may render judicial review moot or change the scope of it. It may not be the case in this particular one. Now, so just because our time is limited, assuming for the moment that we decide we do have jurisdiction under Pinto. Okay. I would like to hear your argument on the time bar issue that I was talking to your adversary about, because I'm interested in that. Yes, Your Honor. First, the ---- Mr. Mendoza did not meaningfully challenge that issue. He did not put forth any argument before the board and the board said so. And then on top of that, before this Court, he didn't. So there's an exhaustion issue. There's an exhaustion issue. And then on top of that, he did not challenge the procedural issue of whether the board correctly decided that he failed to meaningfully challenge it. So there's two things, two levels here that he hasn't even addressed before we get to the substance. Okay. And regarding the substance, the point, as you mentioned, Your Honor, the government agrees, it's that, not exception, but that part of the statute that says an unaccompanied minor's application, the time bar does not apply to him or her. That depends on if he applied while he's an unaccompanied minor. Well, that's the question your adversary said. That's not the law. I actually just thought I was wrong when I asked the question. Yes. So is it his age at the time he enters or is it his age at the time he applies? It's the age at the time he applies. What do you say? Wait. Can you give me a citation for that? Other than the statute, because that has not been addressed in case law. What Petitioner's counsel discussed was the case such as here when someone does come in as a minor but then applies a few years later. So he or she is beyond the time period, but there's an exception that is called legal disability, may apply, and you can discount that time that he was under age. But with respect to the statute that just says, hey, the time bar does not apply to an unaccompanied minor, it's at the time of filing. Because logically, if someone came in at 17, then when they're 35, they're applying for asylum or whatever age, that they just get, you know, discounted. It doesn't make much sense. So that's the – that's our substantive response to the time bar. But you do not – the Court does not need to even get to that. Because of the failure to exhaust. Right. Okay. I was just going to make sure. You're saying there's no case law, but the statute's very clear. The statute is clear. Yes. Yes, Your Honor. And regarding the remainder of the merits of the petition for review, as I stated earlier, the Petitioner failed to – failed to challenge and thus waived the issue of whether the Board correctly determined that he failed to meaningfully challenge before the agency. And so – and he also thus then failed to exhaust the substantive arguments about asylum with holding of removal in CAT. And regarding the due process claim against the immigration judge, that is also straightforward. Such a due process claim, one has to show error and prejudice. There's – he has not shown prejudice for the same reasons he failed regarding the appeal. And the error – immigration judges are by statute – it's their responsibility to question, cross-examine the alien, and help develop the record. And while you – his tone may be argumentative at times, all the questions raised were relevant and to the specifics of the case. And so for these reasons, first, the government argues that there's no jurisdiction and that this Court should extend the abdicillon holding. It's clearly irreconcilable with Pinto. And if not, then the Court should deny this case on the merits. In the 40 seconds left, we've talked about the CAT claim, we've talked about asylum. Yes. But your adversary says the withholding of removal claim is still – is exhausted and is live. What is your response to that? Well, it's not – what the Board said was that in a little different manner, and once again he failed to meaningfully challenge. Well, I think that's in dispute, right? Your adversary thinks it is. But if you look back to the brief that he submitted before the Board, all that is mentioned after, you know, all of it is about the due process claim. And at the end, he says that he presented a well-founded fair persecution on the basis of an imputed political opinion and the evidence presented of the brutal killing of his father and other similarly situated people support this well-founded fair or thus a clear probability. That doesn't exhaust – I mean, that doesn't meaningfully challenge the issue because it doesn't dispute the underlying facts and the fact that his family remained in Nicaragua without problem or the lack of background evidence of whether the Sandinista-controlled government would be interested and would target him for such persecution. So you're saying he's raised but not meaningfully argued. Correct, Your Honor. Thank you. Thank you, Your Honors. Thank you very much. We have some rebuttal time. Thank you. With respect to the issue of due process and the immigration judge in this case, while the law does provide that an immigration judge may interrogate, examine, cross-examine a witness, in this case, the immigration judge far exceeded those parameters. On page 171 of the record, the immigration – Let me interrupt because time is so limited. But even so, where would be the proof of prejudice? Let's assume that the conduct was sort of collectively over the top. Let's assume for the moment. Where is the prejudice? I think the proof of prejudice is provided for in the immigration judge's oral decision. In that decision, the immigration judge states, as counsel for the government just pointed out, that Mr. Mendoza-Rizzo's family still lives in Nicaragua without any issue. That is provided for in the immigration judge's order. But the transcript provides that the family has been living in hiding for 10 years. And the transcript of the hearing provides that the mother abandoned – the whole family abandoned the property because they couldn't go back to sell it because they would be killed. The immigration judge's decision finds that Mr. Mendoza-Rizzo attended school and never used a different name. However – may I just finish this? Go ahead. Thank you. However, the record reflects that the testimony actually stated that a year after Mr. Mendoza's father was murdered, he had to stop attending school because they wanted him to use his name and he was actually going by a different variation of his name so people wouldn't know him. I think that's the prejudice that is displayed. Thank you. Thank you both for your argument. The case of Rizzo v. Lynch is submitted.
judges: M. Smith, N.R. Smith, Scheindlin